**Date Signed:**
**December 20, 2023**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>CECIL DANIEL DAVIS aka BUD DAVIS,<br><br>           Debtor. | Case No.: 23-00432<br>Chapter 13<br><br>Related: ECF 43 |

## ORDER OVERRULING OBJECTION TO
## DEBTOR'S CLAIMED HOMESTEAD EXEMPTION

Debtor Cecil Daniel Davis claims an exemption under California law in his property located in Hawaii. (ECF 12 at 11.) Creditor "Santa Fe Employes Hospital Association – Coast Lines" ("SFEHA"), objects. SFEHA argues that Mr. Davis was domiciled in Hawaii, not California, during the relevant period and that therefore he may claim only the Hawaii homestead

1

exemption and not the much larger California exemption. I will overrule the objection to the exemption because I find that Mr. Davis was domiciled in California during the relevant period.

The court held a hearing on the objection on December 12, 2023. James A. Dumas, Jr., and Steven Guttman appeared for SFEHA. Ofir Raviv, Chuck Choi, and Michael Okazaki appeared for Mr. Davis. Both parties agreed that, although the issue of domicile is a factual question, the court should decide the objection based on the written submissions, and neither party requested an evidentiary hearing.

**LEGAL STANDARD**

Debtors in bankruptcy cases can claim certain property as "exempt." Exempt property is not subject to creditor's claims (with a few limited exceptions), § 522(c),[1] or the expenses of administering the bankruptcy case, § 522(k); *Law v. Siegel*, 571 U.S. 415, 417-418 (2014).

The debtor in a bankruptcy case filed by a domiciliary of Hawaii can

---

[1] Unless otherwise indicated, all references to sections are to the Bankruptcy Code, 11 U.S.C.

claim as exempt either the so-called "federal exemptions" listed in § 522(d)[2]

or the so-called state exemptions. *See* § 522(b)(1), (2), (3). Mr. Davis has

chosen the state exemptions.

If the debtor chooses the state exemptions, § 522(b)(3)(A) dictates

which state's law applies. A debtor choosing the state exemptions may

exempt:

> any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place . . . .

§ 522(b)(3)(A).

"The word 'domicile' in § 522 has its usual legal meaning: the place

which is the debtor's intended permanent residence." *Burke v. Larsen (In re*

*Larsen)*, BAP No. NV-20-1133-FBG, 2020 WL 6440884, at *4 (B.A.P. 9th Cir.

Nov. 3, 2020). "[A] person is 'domiciled' in a location where he or she has

---

[2] Section 522(b)(2) permits states to bar their domiciliaries from choosing the federal exemptions. California has "opted out" of the federal exemptions. Hawaii has not. But this is immaterial because Mr. Davis has chosen the state exemptions.

3

established a fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely." *Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986) (cleaned up).

As a general proposition of law, a person can have multiple residences but can have only one domicile. *Gaudin v. Remis*, 379 F.3d 631, 636 (9th Cir. 2004); *In re Larsen*, 2020 WL 6440884, at *4. This principle applies to section 522(b)(3)(A). *Id.*

The court may consider many facts and circumstances when ascertaining a person's domicile.

> [T]he determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes.

*Lew*, 797 F.2d at 750.

The location of Mr. Davis' domicile is significant because the California exemption is much larger than the Hawaii exemption. The parties agree that, if California law applies, Mr. Davis may exempt $600,000 of equity in a

4

homestead, Cal Code Civ. Proc. § 704.730. But if Hawaii law applies, Mr. Davis could exempt only $30,000, Haw. Rev. Stat. § 651-92(a)(1).

A debtor can claim the California homestead exemption in property located in another state. *In re Arrol*, 170 F.3d 934, 936-37 (9th Cir. 1999).

**FACTUAL FINDINGS**

Mr. Davis and his first wife lived in California beginning in the early 1970's. There is no question that they were domiciled in California until at least 2005. They worked, lived, and raised children there.

Mr. Davis became a director of SFEHA in 1982 and the chairman of the board in 1986. At all relevant times, SFEHA's offices were located in California.

In 2005, Mr. Davis and his first wife moved to Hawaii because she had taken a job here. In 2006, they bought the house in Ewa Beach, Hawaii, that is the subject of this dispute. Mr. Davis continued his work for SFEHA and traveled to SFEHA's offices in California for meetings.

Mr. Davis' first wife passed away in 2010.

In 2011, Mr. Davis became the business manager for SFEHA. At some

5

point, he also became CEO of SFEHA and began drawing a salary. SFEHA claims that its board never approved Mr. Davis' hiring or salary.

In 2013, Mr. Davis met Karen Miller, who lived in California, close to SFEHA's offices and the former home of Mr. Davis and his first wife. Mr. Davis and Ms. Miller married in 2014 and Mr. Davis began to live in Ms. Miller's home for a significant part of his time.

Mr. Davis initially hoped that he and Ms. Miller would divide their time equally between Hawaii and California. Ms. Miller did not share these hopes, however; she wanted to spend most of her time in California so she could be close to her children and grandchildren and operate a retail store that she co-owned in California. Mr. Davis acceded to his second wife's wishes.

After 2014, they mostly lived in Ms. Miller's California house. Mr. Davis became close to Ms. Miller's children and grandchildren and took a role in her business. Their joint federal income tax returns listed their California address. He opened one or more bank accounts in California, purchased a vehicle in California, and paid for some of the expenses of

6

maintaining the home in California that he shared with Ms. Miller.

After 2014, Mr. Davis maintained ties with Hawaii. He continued to own the Ewa Beach home (through a revocable family trust) and paid the mortgage and most of the expenses of owning it. One of his daughters lived in that home rent free, paying only the utility bills. (His other daughter lives in the United Kingdom.) He received some of his medical care at a VA facility in Hawaii (in addition to medical care in California). He maintained a Hawaii driver's license and a Hawaii bank account (along with one or more California bank accounts) and was registered to vote in Hawaii. He claimed reimbursement from SFEHA for travel from Hawaii to California for board meetings, pursuant to a SFEHA policy allowing reimbursement for such travel from a director's home.

In June 2021, Mr. Davis resigned from his positions with SFEHA, at about the same time that SFEHA began accusing him of misuse of SFEHA's funds. In May 2023, he and Ms. Miller separated. Ms. Miller told Mr. Davis to move out of her California house, so on or about May 4, 2023, Mr. Davis moved into his Ewa Beach house with no plan to return to California.

7

In oral testimony, Mr. Davis said that he paid for nearly all of the expenses of the Ewa Beach house because it was his "primary residence." T context makes clear that he used this phrase to describe the Ewa Beach house because it was the only residence that he owned; Ms. Miller owned the home that she and he had occupied in California.

Based on all of the evidence, I find that, from 2014 until early May 2023, Mr. Davis had his intended permanent residence in California, and that, from early May 2023 until the date of his bankruptcy petition, Mr. Davis had his intended permanent residence in Hawaii.

**LEGAL CONCLUSIONS**

Based on these findings of fact, I conclude that Mr. Davis had more than one domicile during the 730-day period prior to his bankruptcy filing (i.e., the period from until June 8, 2021, through June 8, 2023), and that he was domiciled in California for the 180-day period prior to that 730-day period. Accordingly, Mr. Davis is entitled to claim the California homestead exemption, and SFEHA's objection to that claim of exemption is OVERRULED.

8

**END OF ORDER**